```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
---
FRED JENKINS,
                      Plaintiff,       21-cv-2848 (JGK)

      - against -             MEMORANDUM OPINION
                                                   AND ORDER
NYC HEALTH AND HOSPITALS
CORPORATION ET AL.,
                    Defendants.

---

JOHN G. KOELTL, District Judge:

    The pro se plaintiff, Fred Jenkins, brought this action against the New York City Health and Hospitals Corporation ("H&H") and Kevin Matulich, a member of H&H senior management. The plaintiff's claims arise out of the termination of the plaintiff's employment by H&H. The defendants have filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff has filed a "motion for joinder" which, liberally construed, is a motion to file an amended complaint adding new claims.

I.

    The plaintiff alleges as follows in his pro se complaint. The plaintiff, an African American man, was hired as a maintenance worker at an H&H facility in October 2019. He was placed on a customary one-year probationary period. At that time, there were only three black employees in the area in which the plaintiff worked.

In May 2020, the plaintiff was in an elevator with three individuals, including Matulich. The individuals were discussing the number of people testing positive for Covid-19, at a time when around 200,000 cases of Covid-19 had been diagnosed in New York. The plaintiff alleges that, during this conversation, Matulich said in substance to the plaintiff, "That's funny, I heard that only you black guys get it."[1]

The plaintiff promptly reported the incident to his direct supervisor, Mark Kinzel, who told the plaintiff to document the incident but to leave the situation alone because the plaintiff was still in his probationary period. The plaintiff then sought the opinion of a supervisor in the Environmental Housekeeping department, who informed the plaintiff that Matulich had exhibited discriminatory animus to other employees in the past, but also recommended that the plaintiff do nothing because the situation would not change and because Matulich, who had a senior role, could get the plaintiff fired.

The plaintiff then tried to speak to the facility's equal employment opportunity officer. Because the officer was not in her office at the time, the plaintiff left a message. Several

---

[1] Unless otherwise specified, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

2

days later, the officer sent the plaintiff a form, which the plaintiff ultimately did not fill out.

In July 2020, Matulich saw the plaintiff walking into the office wearing a Black Lives Matter hat. The plaintiff alleges that Matulich asked the plaintiff, "What are you doing wearing that hat?" and told the plaintiff that the hat was not part of the plaintiff's uniform. The plaintiff said that he was only wearing the hat on his way to work, to which Matulich responded in substance, "Don't let me see you wearing that hat in here."

In August 2020, Matulich called the plaintiff into his office and told the plaintiff that Matulich wanted to extend the plaintiff's probation by three months because Matulich was unsatisfied with the plaintiff's work. When the plaintiff asked for clarification, Matulich cited an incident that had occurred almost 7 months earlier. The plaintiff alleges that Matulich then became angry and told the plaintiff, "I can fire your black ass for nothing," and that Matulich believed that the carpenters, who were all white, did not want to work with the plaintiff. The plaintiff had never heard this before, and knew of no reason that this might be.

The plaintiff did not immediately accept the extension of his probation. He told Kinzel about the conversation, who told the plaintiff that Matulich had never contacted Kinzel about the plaintiff's performance. On Kinzel's advice, the plaintiff

3

contacted a union representative, who then spoke to Kinzel. Kinzel informed the union representative that there was no reason to extend the plaintiff's probation. The plaintiff believes that the union representative later called Matulich. It appears that that the plaintiff's probation was not extended.

In October 2020, a few days before the end of the plaintiff's probationary period, the plaintiff received a call from Jamie Grecco, the director of H&H human resources. Grecco informed the plaintiff that the plaintiff was being terminated because Matulich had reported the plaintiff's inadequate performance. The plaintiff defended his performance and told Grecco that that the plaintiff was facing racial discrimination and to call Kinzel. The plaintiff alleges that Kinzel spoke with Grecco and told Grecco that the plaintiff had been doing a good job. Nonetheless, Grecco called the plaintiff back and confirmed that the plaintiff was being terminated. Grecco gave as an additional reason an allegation by Matulich that the plaintiff had refused to submit to a Covid-19 screening. The plaintiff denies this allegation.

In February 2021, the plaintiff filed a charge with the United States Equal Employment Opportunity Commission. In April 2021, the plaintiff brought this action. In July 2021, the plaintiff was issued a Notice of Right to Sue, and amended his complaint to include Title VII claims. In December 2021, the

4

Court allowed the plaintiff to file a second amended complaint (the "Operative Complaint"), which did not include Title VII claims. The defendants then moved to dismiss the Operative Complaint. In January 2022, the plaintiff made an application captioned "Motion for Joinder of Claims," which included two additional claims that the plaintiff sought to add, namely a Title VII claim and a claim pursuant to 42 U.S.C. § 1981. Those two motions are now before the Court.

## II.

The Court has subject matter jurisdiction over the plaintiff's claims that arise under federal law pursuant to 28 U.S.C. § 1331. The Court has supplemental subject matter jurisdiction over the plaintiff's claims that arise under state law pursuant to 28 U.S.C. § 1367(a), because the state law claims arise from the same "common nucleus of operative fact" as the claims arising under federal law, such that they "form part of the same case or controversy" under 28 U.S.C. § 1367(a). See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997).

## III.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. Where, as here, the plaintiff is proceeding pro se, the Court is required to read the plaintiff's pleadings "liberally and interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).

**A.**

The plaintiff's first six causes of action allege disparate treatment on the basis of race, a hostile work environment based on race, and retaliation for reporting racial discrimination.

6

For each of these violations, the plaintiff seeks damages under 42 U.S.C. § 1981, and injunctive relief under 42 U.S.C. § 1983. While § 1981 guarantees certain rights against racial discrimination, that section does not provide a private right of action for violation of those rights by state actors. Duplan v. City of New York, 888 F.3d 612, 618-20 (2d Cir. 2018). Instead, a plaintiff seeking relief for violation of those rights by state actors must bring suit under 42 U.S.C. § 1983. See id. The same is true of claims for a violation of the right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution, which similarly protects against disparate treatment, a hostile work environment, and retaliation. See Naumovski v. Norris, 934 F.3d 200, 212 (2d Cir. 2019); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 80 (2d Cir. 2015). Accordingly, the plaintiff's claims seeking damages under § 1981 and his federal equal protection claim are construed as arising under § 1983.

The plaintiff first alleges disparate treatment. To state a claim on a disparate treatment theory under § 1983, a plaintiff must allege an adverse employment action that, but for the plaintiff's protected characteristic, would not have been taken. Naumovski, 934 F.3d at 212-13. In this case, the plaintiff has alleged facts amounting to disparate treatment. The plaintiff has alleged that he was terminated, an adverse employment

7

action. See, e.g., Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). And the plaintiff has alleged several racially charged comments by Matulich. These comments "give rise to a plausible inference that racially discriminatory intent motivated his termination." See Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 989, 991-93 (S.D.N.Y. 2017); accord Byvalets v. New York City Hous. Auth., No. 16-cv-6785, 2017 WL 7793638, at *11 (E.D.N.Y. July 28, 2017), report and recommendation adopted, 2018 WL 1067732 (E.D.N.Y. Feb. 23, 2018).

The plaintiff next alleges a hostile work environment. To state a claim on a hostile work environment theory under § 1983, a plaintiff must allege "offensive conduct based on [the protected characteristic] that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Naumovski, 934 F.3d at 212. As with a disparate treatment claim, the plaintiff must allege but-for causation. Wilson v. Hanrahan, 804 F. App'x 58, 62 (2d Cir. 2020). "[W]hether conduct is not severe or pervasive enough to successfully state a claim for hostile work environment . . . is a factual question that is generally inappropriate for the Court to determine on a motion to dismiss." Rubert v. King, No. 19-cv-2781, 2020 WL 5751513, at *9 (S.D.N.Y. Sept. 25, 2020).

8

In this case, the plaintiff has alleged facts amounting to a hostile work environment. In addition to racially charged comments and unfounded allegations as to the plaintiff's job performance and relationship with his colleagues made by an alleged senior member of management, the plaintiff has alleged that Matulich had subjected other employees to hostile acts based on discriminatory animus, and that the plaintiff had been made aware of that fact. The Court of Appeals for the Second Circuit has noted that "the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment." Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997). In conjunction with the statements made directly to the plaintiff, these allegations suffice to state a plausible claim for a hostile work environment. See Rubert, 2020 WL 5751513, at *9.

Finally, the plaintiff alleges retaliation. To state a claim for retaliation, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015). The defendants in this case dispute only the last element, arguing that the passage of three months is too long to allow for an inference of

9

retaliation. However, there is no bright line as to what length of time is too long to permit an inference of retaliation. Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013). In this case, a period of three months is short enough to permit an inference of retaliation in light of the circumstances surrounding the plaintiff's termination, which included threats of termination and unfounded allegations and criticism by Matulich. See Rasmy v. Marriott Int'l, Inc., 952 F.3d 379, 391 (2d Cir. 2020).

The defendants argue that the plaintiff has not alleged facts amounting to a policy or custom, and that H&H may therefore not be held liable for any claim under § 1983 pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). However, the defendants raised this argument for the first time in reply, and the Court therefore will not consider it. See, e.g., Aviva Trucking Special Lines v. Ashe, 400 F. Supp. 3d 76, 80 (S.D.N.Y. 2019). The defendants are able to raise this claim in subsequent motions. Because the plaintiff has alleged sufficient facts amounting to disparate treatment, a hostile work environment, and retaliation, the motion to dismiss the claims arising under § 1983 against both Matulich and H&H is **denied**.

**B.**

The plaintiff also brings claims for disparate treatment, a hostile work environment, and retaliation under the New York State and City Human Rights Laws. Because the requirements under these statutes are no higher than the requirements to state a claim under § 1983, it follows that the plaintiff has stated claims under these statutes. See, e.g., Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 114-15 (2d Cir. 2013); Lamarr-Arruz v. CVS Pharmacy, Inc., 271 F. Supp. 3d 646, 655 & n.6 (S.D.N.Y. 2017); Doran v. N.Y. State Dep't of Health Off. of Medicaid Inspector Gen., No. 15-cv-7217, 2017 WL 836027, at *13 (S.D.N.Y. Mar. 2, 2017). Accordingly, the claims under the New York State and City Human Rights Laws survive for the same reason as the claims under § 1983, and the motion to dismiss those claims is **denied**.

**C.**

The defendants move to dismiss the plaintiff's state equal protection claims on the ground that they fail for the same reasons as the federal equal protection claims. Because the federal equal protection claims survive, this argument is without merit, and the motion to dismiss the state equal protection claims is **denied**. However, the parties should consider whether there is indeed a private right of action for a violation of Article I, section 11 of the New York State

11

Constitution where the plaintiff has an alternative remedy under § 1983 for a violation of the parallel provision of the United States Constitution. See, e.g., Watson v. Richmond Univ. Med. Ctr., 412 F. Supp. 3d 147, 167 (E.D.N.Y. 2017).

### D.

The plaintiff brings claims for violation of the plaintiff's right to due process under the United States and New York State Constitutions. However, because the plaintiff did not respond to the defendants' arguments in support of dismissing those claims, the plaintiff has abandoned them. See, e.g., Banyan v. Sikorski, No. 17-cv-4942, 2021 WL 2156226, at *2 (S.D.N.Y. May 27, 2021). Accordingly, the defendant's motion to dismiss the due process claims is **granted**.

### E.

The plaintiff brings a claim for violation of New York City Personnel Rule 7.5.4(c) and (e). However, those rules do not apply to H&H. The New York City Health and Hospitals Corporation Act, N.Y. Unconsol. Laws § 7381 et seq., expressly provides that H&H was only subject to New York City-wide personnel rules until H&H adopted its own personnel rules. See id. § 7390. Because H&H has now done so, see Woodard v. N.Y. Health & Hosps. Corp., No. 04-cv-5297, 2010 WL 2735757, at *6 & n.6 (E.D.N.Y. July 9, 2010), the New York City Personnel Rules are no longer applicable to H&H. Accordingly, the plaintiff has not stated a

12

claim for violation of the New York City Personnel Rules, and the motion to dismiss this claim is **granted**.

### IV.

The plaintiff's motion for joinder is, in substance, a motion to add two claims. Under Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave" to amend a pleading "when justice so requires."

### A.

The plaintiff first seeks to add a claim under Title VII. Liberally construed, the plaintiff's motion seeks to add a Title VII claim against both Matulich and H&H. Title VII does not provide a cause of action against individual defendants. Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995). Accordingly, a Title VII claim against Matulich would be futile, and the plaintiff's motion to add such a claim is therefore **denied**. See, e.g., Al-Cantara v. N.Y. State Div. of Hous. & Cmty. Renewal, No. 06-cv-3335, 2007 WL 766123, at *2 (S.D.N.Y. Mar. 12, 2007).

However, a Title VII claim may proceed against H&H. Like § 1983, Title VII provides a cause of action for claims of disparate treatment, a hostile work environment, and retaliation. See Naumovski, 934 F.3d at 212, 220 & n.77. The allegations required to state a claim are similar under each statute, except that the degree of causation required to plead a Title VII claim for disparate treatment or a hostile work

13

environment is lower. See id. at 212-13, 220 & n.77. Accordingly, for the same reasons that the § 1983 claims survive, the plaintiff's allegations are also sufficient to state a claim under Title VII. See Toussaint v. City of New York, No. 19-cv-1239, 2021 WL 4429316, at *6-8 (S.D.N.Y. Sept. 27, 2021). Because the defendants have not identified any other reason that the Title VII claim cannot proceed against H&H, the defendants have not identified any reason that the claim would be futile. Because there is moreover no apparent fault on the part of the plaintiff and because the defendants' response to the motion makes clear that there would be no prejudice to the defendants, see Foman v. Davis, 371 U.S. 178, 182 (1962), the plaintiff's motion to add a Title VII claim against H&H is **granted.**

B.

The plaintiff also seeks to add a claim that Matulich "deliberately caused th[e] plaintiff to be wrongly terminated from his employment position" because of the plaintiff's race "in direct violation of th[e] plaintiff's rights under 42 U.S.C. § 1981." ECF No. 45. However, even liberally construed, it is not clear what this claim alleges beyond what is already alleged in the Operative Complaint, suggesting that this claim would be redundant (if construed as a claim under § 1983) or futile (if it is actually a claim made under § 1981). For the reasons

14

explained above, § 1981 does not itself provide a remedy for a claim of race discrimination against state actors. Accordingly, the plaintiff's motion to amend the complaint is **denied** as to this claim.

## Conclusion

The Court has considered all of the arguments of the parties. To the extent not addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted** in part and **denied** in part. The plaintiff's motion for joinder is construed as a motion to amend the complaint to add certain claims, and is **granted** in part and **denied** in part. The plaintiff may file a third amended complaint consistent with this opinion by September 9, 2022. The Clerk is directed to close all pending motions.

**SO ORDERED.**
Dated:   New York, New York
         July 19, 2022

                                    _____
                                       John G. Koeltl
                                  United States District Judge